UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 3:14CV-00698-JHM**

**MARVIN MABRY, et al.**                                                                    **PLAINTIFFS**

**V.**

**DIRECTV, LLC, et al.**                                                                    **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions by Defendants, DIRECTV, LLC, and Multiband Corp., to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) [DN 17, DN 18] and on a motion by Plaintiffs, Marvin Mabry, Richard Maybury, Michael Stone, Chris Atkins, Clentin Cox, and James Lockhart, for leave to amend the complaint should the Court grant Defendants' motions to dismiss [DN 29]. Fully briefed, these matters are ripe for decision.

### I. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true[,]" id., and determine whether the "complaint states a plausible claim for relief[,]" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls

short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678, 679. Instead, the allegations must "'show[ ] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). It is against this standard the Court reviews the following facts.

## II.  BACKGROUND

On October 21, 2014, Plaintiffs, Marvin Mabry, Richard Maybury, Michael Stone, Chris Atkins, Clentin Cox, and James Lockhart, filed suit against DIRECTV and/or Multiband Corp. (collectively "Defendants") alleging overtime and minimum wage claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207.  Plaintiffs allege that DIRECTV is the largest provider of satellite television services in the United States.  To install and repair the satellite systems, DIRECTV uses a network of providers who supply it with technicians ("Provider Network" or "providers").  Plaintiffs are six former technicians who installed DIRECTV satellite television equipment in the State of Kentucky.  Five of the Plaintiffs worked for Multiband, a member of DIRECTV's provider network, and the remaining Plaintiff worked for other providers such as DirectSat or Skylink.  Only three of the six Plaintiffs brought suit against Multiband.

Plaintiffs maintain that DIRECTV conceived of, formed, and manages the Provider Network.  DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California.  Plaintiffs contend that at all relevant times, DIRECTV was the primary, if not the only, client of the providers and was the source of substantially all of each provider's income.

DIRECTV controls the Provider Network through detailed agreements known as Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider

2

Agreement of Equipment Installation and Service (collectively "Provider Agreements") that establish policies, procedures, performance standards, and payment method requirements. The Provider Agreements establish almost identical business relationships between DIRECTV and each provider. The Provider Agreements require technicians to wear DIRECTV shirts and show customers DIRECTV identification cards. Plaintiffs typically start their workday by receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV utilizes a database known as SIEBEL to coordinate the assignment of particular work orders. DIRECTV delivers the assignment of work orders to technicians using a technician's unique "Tech ID Number." Upon receiving the daily work schedules, Plaintiffs generally called each customer to confirm the timeframe within which the technician is expected to arrive. Upon arriving at the job site, Plaintiffs were required to check-in by telephone with DIRECTV via its dispatching system. Upon completion of the assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and then worked with DIRECTV employees to activate the customer's service. (See Complaint at ¶¶ 1, 16-48 , DN 1.)

Plaintiffs were paid pursuant to a "piece-rate" payment method for satisfactorily completing a DIRECTV-approved satellite installation. This system paid technicians for certain enumerated productive tasks, but did not compensate the technicians for all necessary work they performed such as:

> assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

3

(Complaint ¶ 53.) Additionally, Plaintiffs were subject to "chargebacks" by Defendants for the following reasons: faulty equipment, improper installation, customer calls regarding how to operate their remote control, or customers' failure to give greater than a 95 percent satisfaction rating for the services provided by the technician. Several of the Plaintiffs were classified as independent contractors and were required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. Plaintiffs contend that Defendants' "practice of imposing 'chargebacks,' failing to compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs' necessary business expenses resulted in Plaintiffs routinely working more than forty hours in a work week while being denied overtime pay and being subjected to an effective wage rate below that required by applicable law." (Complaint ¶ 60).

### III. DISCUSSION

The Defendants argue three bases upon which the complaint should be dismissed. First, DIRECTV moves to dismiss Plaintiffs' complaint on the basis that Plaintiffs fail to allege the existence of an employment relationship between the technicians and DIRECTV. Second, both DIRECTV and Multiband move to dismiss Plaintiffs' complaint arguing that Plaintiffs have not alleged facts stating a plausible claim under the FLSA. And third, both DIRECTV and Multiband argue that the two-year FLSA statute of limitations bars Plaintiffs' claims in whole or in part.

### A. Employment Relationship under the FLSA

DIRECTV argues that Plaintiffs failed to pled sufficient facts to establish that they had an employment relationship with DIRECTV and, therefore, do not have a valid claim under the FLSA. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and "employee" as "any individual employed by an employer." Id. at § 203(e)(1). The Act also defines "employ" as "to

4

suffer or permit to work." Id. at § 203(g). Furthermore, an employee can have more than one employer under the FLSA. 29 C.F.R. § 791.2.

"The FLSA's definition of 'employee' is strikingly broad and 'stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles.'" Keller v. Miri Microsystems, LLC, 781 F.3d 799, 804 (6th Cir. 2015). "When determining whether workers are employees under the FLSA, the Court must look beyond mere labels and contractual agreements." Doucette v. DIRECTV, Inc., 2015 WL 2373271, *2 (W.D. Tenn. May 18, 2015). "'[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service.'" Id. (quoting Donovan v. Brandel, 736 F.2d 1114, 1116 (6th Cir. 1984)). In applying this economic-reality test, the Sixth Circuit has identified six factors to consider: "'1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed [; and] . . . [6) ] whether the service rendered is an integral part of the alleged employer's business." Keller, 781 F.3d at 807 (quoting Brandel, 736 F.2d at 1117). "No one factor is determinative; '[a] central question is the worker's economic dependence upon the business for which he is laboring.'" Id. (quoting Brandel, 736 F.2d at 1120).

Examining the allegations in Plaintiffs' complaint in light of these above factors, the Court finds that Plaintiffs allege sufficient facts demonstrating an employment relationship between DIRECTV and Plaintiffs under the FLSA. Plaintiffs assert that DIRECTV was the primary, if not the sole, client of the providers for which Plaintiffs worked demonstrating a

5

continuous and indefinite relationship between the parties.  Further, Plaintiffs claim DIRECTV issued training manuals to technicians and required technicians to obtain certification from the Satellite Broadcasting & Communications Association reflecting control by DIRECTV over the skills required to render services for DIRECTV.  Significantly, as discussed in detail above, Plaintiffs allege that DIRECTV had complete control over the Plaintiffs' work, including Plaintiffs' specific job assignments, the workers' daily schedule, and the work performed.  DIRECTV required the technicians to wear DIRECTV shirts, to wear identification badges, and to place car decals on their vehicles.  Additionally, the Provider Agreements between DIRECTV and the provider specified the methods by which the technicians must install DIRECTV's products, the standards of operation, and the pay for providers and technicians.  DIRECTV also utilized a network of quality control personnel to oversee and review the work performed by Plaintiffs.  Given the degree of control DIRECTV had over Plaintiffs, the Plaintiffs could not choose which jobs to perform or increase their profits by technical skill.  Finally, DIRECTV "could not provide its satellite-television services without technicians to install its products;" thus, the services rendered by Plaintiffs are an integral part of DIRECTV's business.  Doucette, 2015 WL 2373271, *4.

Given these facts, the Court finds that Plaintiffs have provided "detailed allegations as to the control DIRECTV had over them and their dependent relationship with DIRECTV" sufficient to withstand the motion by DIRECTV to dismiss. Id.  This decision is consistent with the majority of courts that have addressed the employment relationship between DIRECTV and technicians and denied similar motions to dismiss based on the joint employment argument. See, e.g., Doucette v. DIRECTV, 2015 WL 2373271, *5 (W.D. Tenn. May 18, 2015); Chesley v. DIRECTV, Inc., 2015 WL 3549129, *4 (D. N.H. 2015); Berger v. DIRECTV, Inc., 2015 WL

1799996, *6 (D. Or. Apr.16, 2015); Arnold v. DirecTV, Inc., 2011 WL 839636, *6–7 (E.D. Mo. Mar. 7, 2011) (same); Renteria–Camacho v. DIRECTV, Inc., 2015 WL 1399707, *2 (D. Kan. Mar. 26, 2015); Lang v. DirecTV, Inc., 735 F. Supp. 2d 421, 432–34 (E.D. La. 2010).

### B. Failure to State a Claim

Defendants move to dismiss Plaintiffs' complaint arguing that (1) Plaintiffs have failed to plead any facts that would support an inference that the alleged off-the-clock work, charge backs, and failure to reimburse business expenses caused any of them to receive an effective wage below the applicable minimum wage in any workweek and (2) Plaintiffs' overtime claim fails because Plaintiffs do not identify any single workweek in which they worked over 40 hours and did not receive overtime for the hours worked over 40 hours.

"Federal courts across the country diverge on the application of *Twombly* and *Iqbal* to claims brought under the FLSA." Doucette, 2015 WL 2373271, *6. Some courts "have required plaintiffs [in FLSA cases] to approximate the overtime hours worked or the amount of wages owed, whereas other courts have forgone such a requirement." Landers v. Quality Communications, Inc., 771 F.3d 638, 641 (9th Cir. 2014)(collecting cases). The Sixth Circuit has not yet ruled on what factual allegations must be pled to state a plausible claim under the FLSA following the Supreme Court's decisions in Twombly v. Bell Atl. Corp., 550 U.S. 544 (2007), and Iqbal v. Ashcroft, 556 U.S. 662 (2009). Defendants urge the Court to adopt the holdings of the First, Second, Third, and Ninth Circuits and require a FLSA plaintiff to "allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week" in order to survive a motion to dismiss. Landers, 771 F.3d at 645. See also Pruell v. Caritas Christi, 678 F.3d 10, 13 (1st Cir. 2012); Lundy v. Catholic Health System of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013); Davis

v. Abington Memorial Hosp., 765 F.3d 236, 242-43 (3d Cir. 2014). Defendants also argue that Plaintiffs' complaint is devoid of additional factual allegations necessary to make a plausible claim for minimum wage violations, namely: (1) how many hours Plaintiffs worked for which they were not compensated and in which weeks they worked those hours; (2) what their rate of pay was; (3) what amount of business expenses they incurred for which they were not reimbursed; and (4) the number and amount of charge backs that were allegedly deducted from their pay. In response, Plaintiffs state that the complaint contains sufficient factual matter to state a FLSA claim that satisfies Fed. R. Civ. P. 8, and they are not required to identify specific dates and times they actually worked in excess of forty hours to plausibly state a FLSA claim.

Contrary to Defendants' assertion, the Court finds that Twombly and Iqbal do not require a FLSA plaintiff to plead "in detail the number of hours worked, their wages, or the amount of overtime owed to state a claim for unpaid minimum wages or overtime wages." Landers, 771 F.3d at 641-642 (noting that no circuit court had interpreted Rule 8 to require this information); see also Potts v. Nashville Limo & Transport, LLC, 2014 WL 7180164, *2 (M.D. Tenn. Dec. 16, 2014). Furthermore, "[d]istrict courts in the Sixth Circuit confronting the issue of whether to embrace the First, Second, Third, and Ninth Circuit's holdings have adopted a more lenient course in determining what facts must be pled to state a plausible FLSA claim." Adams v. Diversicare Leasing Corp., 2015 WL 4208779, *5 (W.D. Tenn. July 10, 2015); see also Anderson v. GCA Services Group of North Carolina, Inc., 2015 WL 5299452 (W.D. Ky. Sep. 9, 2015)(discussing the FLSA pleading standard). District courts within the Sixth Circuit have generally found that factual allegations that a plaintiff was employed by the defendant, worked regularly and repeatedly in excess of a forty hour week, and failed to receive overtime compensation for each hour worked in excess of forty hours per week was sufficient to state a

claim for relief under Fed. R. Civ. P. 8.  Id.[1]  One reason the district courts in the Sixth Circuit cite for adopting a more lenient standard is that in most FLSA cases the employers, rather than employees, maintain the records of wages, hours, and other employment data.  Doucette, 2015 WL 2373271, *7.  As a result, to require FLSA plaintiffs "to each specify in their complaint a particular week in which they worked more than 40 hours without overtime pay would . . . be rigidly harsh and inconsistent with *Iqbal* and *Twombly*."  Pope v. Walgreen Co., 2015 WL 471006. *2 (E.D. Tenn. Feb. 4, 2015).

In the present case, Plaintiffs allege detailed facts which support a plausible claim under the FLSA and provide Defendants with sufficient notice of the allegations to form a response. Plaintiffs have provided more than a formulaic recitation of their claims.  Each Plaintiff details his respective employment dates, i.e. from September 2008 and May 2010.  Each Plaintiff also estimates the length of his average workweek during the employment period (i.e. 50 to 60 hours a week), the amount of overtime Plaintiff worked per week, and the source of alleged unlawful deductions from his pay by Defendants including chargebacks and failure to reimburse business expenses.  Further, Plaintiffs allege that in addition to certain tasks DIRECTV designated as compensable, the Plaintiffs performed "other work each week during the relevant time period" that DIRECTV and/or Multiband classified as non-compensable work including "assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians

---

[1] See also Potts, 2014 WL 7180164, *2 (finding the complaint sufficient where it alleged that the plaintiffs worked overtime and did not receive overtime pay); Kutzback v. LMS Intellibound, LLC, 2014 U.S. Dist. LEXIS 126941, *18 (W.D. Tenn. Sept. 6, 2014) (noting that "[a] simple statement that the employer failed to pay overtime . . . to covered employees is all that is required in order to establish a claim of a FLSA violation" and concluding that "the Sixth Circuit merely requires [pleading] that the employer had actual notice of the FLSA requirements to pay overtime wages and its failure to adhere to them"); Doucette, 2015 WL 2373271, *6-8 (allegations that defendant's policies caused plaintiff to constantly work in excess of 40 hours per week sufficient to state a claim); Berry v. Office of the Fayette County Sheriff, 2014 WL 6390174 (E.D. Ky. Nov. 14, 2014); Hellenberg v. Integrated Deicing Services, LLC, 2011 WL 317733, *2 (E.D. Mich. Feb.1, 2011).

with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on 'rollback' installations where Plaintiffs had to return and perform additional work on installations previously completed." (Complaint ¶ 53.) According to Plaintiffs, these activities led to both a wage rate below the required minimum wage and uncompensated overtime. Based on these allegations, the Court finds that the complaint sufficiently pleads that the employees were denied minimum wages and overtime wages.

Furthermore, it would appear to the Court that under the facts alleged in the complaint, Plaintiffs have also satisfied the standard for a FLSA claim outlined in Landers v. Quality Communications, Inc., 771 F.3d 638 (9th Cir. 2014). Plaintiffs have alleged that they "worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." Id. at 645. The Ninth Circuit held that the plaintiff in Landers failed to provide "sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." Id. at 646. Here, the complaint does not suffer from this deficiency. In the present case, as a result of either the Defendants' classification of Plaintiffs as independent contractors or the Defendants' characterization of non-compensable work, *every* work week from the technician's start date until his termination date resulted in that technician's work hours exceeding forty hours per week.

Accordingly, the Defendants' motions to dismiss for failure to state a claim on these bases are denied.

### C. Timeliness of Claims

Both DIRECTV and Multiband move to dismiss Plaintiffs' claims as barred by the

FLSA's two-year statute of limitations. In response, Plaintiffs argue that the FLSA's three-year limitations period applies because the Defendants' acted willfully. "Under the FLSA, a lawsuit to recover unpaid compensation must 'be commenced within two years after the cause of action accrued,' unless the cause of action arose 'out of a willful violation,' in which case the lawsuit must 'be commenced within three years after the cause of action accrued.'" Hughes v. Region VII Area Agency on Aging, 542 F.3d 169, 187 (6th Cir. 2008)(quoting 29 U.S.C. § 255(a)).

"An FLSA violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" Doucette v. DIRECTV, Inc., 2015 WL 2373271, *5 (W.D. Tenn. May 18, 2015)(quoting Elwell v. University Hosps. Home Care Servs., 276 F.3d 832, 842 (6th Cir. 2002)). At the motion-to-dismiss stage, "the Plaintiffs must only state a plausible claim that the alleged violations were willful." Doucette, 2015 WL 2373271, *5. Fed. R. Civ. P. 9(b) "allows a plaintiff to plead '[m]alice, intent, knowledge, and other conditions of a person's mind . . . generally,' but the Rule 'does not give a plaintiff license to plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss.'" Id. (quoting Katoula v. Detroit Entertainment, LLC, 557 Fed. Appx. 496, 498 (6th Cir. 2014)). "[A]lthough conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the allegation plausible." Id. (internal citations omitted).

Considering the complaint in the light most favorable to the Plaintiffs, the Court concludes that the Plaintiffs have pled facts which make the allegation of willfulness plausible. Plaintiffs extensively outline the employment policies and practices of DIRECTV and its providers, as well as DIRECTV's exercise of control over the technicians via the Provider Agreements. Plaintiffs contend that the Defendants' misclassification of technicians as

11

independent contractors despite the technicians meeting the definition of an employee under the FLSA was a willful attempt to avoid compliance with the FLSA. (Complaint ¶¶ 1, 2 n.2, 17, 29, 48, 61, 99.) In fact, Plaintiffs specifically allege that "[t]he net effect of Defendants' policies and practices . . . is that the Defendants willfully fail to pay minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs." (Id. ¶ 48). As noted by the district court in Doucette v. DIRECTV, "detailed allegations about the Defendants' implemented policies allegedly intended to evade the FLSA 'do[es] more than make the conclusory assertion that a defendant acted willfully.'" 2015 WL 2373271, *5. Therefore, Plaintiffs have sufficiently alleged a willful violation.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions by Defendants, DIRECTV, LLC, and Multiband Corp., to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) [DN 17, DN 18] are **DENIED.**

**IT IS FURTHER ORDERED** that the motion by Plaintiffs, Marvin Mabry, Richard Maybury, Michael Stone, Chris Atkins, Clentin Cox, and James Lockhart, for leave to amend the complaint should the Court grant Defendants' motions to dismiss [DN 29] is **DENIED AS MOOT**.

*[Signature]*
**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

September 21, 2015